UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ADDINGTON STEWART, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:04CV885 RWS |
| | ) | |
| CITY OF ST. LOUIS, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PAUL E. DAVIS, et al., | ) | |
| | ) | |
| Intervenors. | ) | |

## MEMORANDUM AND ORDER

This matter is before me on the City of St. Louis and Intervenor Union Local 73's Joint

Motion for Partial Summary Judgment on the Issue of Intentional Discrimination [#180]. The

motion will be granted.

Plaintiffs Firefighters' Institute for Racial Equality and four individual African-American

firefighters (collectively "FIRE" or the "FIRE plaintiffs") have filed this action against the City of

St. Louis (the "City") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*,

and 42 U.S.C. §§ 1981 & 1981a. The FIRE plaintiffs claim that the promotion tests for the City

of St. Louis Fire Department in 2000 and 2004 for captain and battalion chief had an adverse

impact on African-Americans *and* that the City *intentionally* discriminated against them in the

testing process. The FIRE plaintiffs seek injunctive relief and damages.

This Memorandum only addresses the FIRE plaintiffs' claim of intentional discrimination.

Whether the tests adversely impacted African-American candidates and whether the content of the

tests was related to safe and efficient job performance and consistent with business necessity are issues that remain before me to be determined after a trial.

The St. Louis Fire Fighters' Association International Association of Fire Fighters Local 73 and several Caucasian firefighters (collectively "Local 73") are intervenors in this case. The intervening Caucasian firefighters took the 2000 and 2004 promotion tests and are on the promotion lists challenged in this case.

The City and Local 73 have moved for summary judgment on the issue of intentional discrimination. The City and Local 73 argue that the FIRE plaintiffs failed to allege intentional discrimination in their Title VII claim and that the FIRE plaintiffs have failed to produce any evidence of intentional discrimination to support their claims.[1]

The FIRE plaintiffs respond that they have established a genuine dispute over whether the City intentionally discriminated against the FIRE plaintiffs in the 2000 and 2004 promotion tests.

The motion will be granted because the FIRE plaintiffs have failed to introduce *any* evidence of intentional discrimination. The FIRE plaintiffs advance several vague, conclusory, and incoherent allegations of intentional discrimination, but allegations are not sufficient evidence to withstand a motion for summary judgment.

---

[1]The City and Local 73 originally contended that FIRE's § 1981 claim should be dismissed because that statute does not provide a cause of action against a local government entity. However, the City and Local 73 abandoned their contention that the § 1981 claim should be dismissed in their reply brief. The City and Local 73 presently do not object to FIRE amending its pleadings to include claims brought under § 1983.

The FIRE plaintiffs argue that although a § 1981 claim may not be brought against a municipality, Eighth Circuit precedent requires that I construe the § 1981 claim as if it were brought under § 1983.

## I.    BACKGROUND

This Complaint is the latest installment in a lengthy history of lawsuits by FIRE and Local 73 alleging racial discrimination in the testing process for promotions to captain and battalion chief in the City of St. Louis Fire Department.  See Firefighters' Inst. for Racial Equality v. City of St. Louis, Mo., 220 F.3d 898 (8th Cir. 2000), cert. denied, 532 U.S. 921 (2001) (battalion chief promotions); St. Louis Fire Fighters Ass'n Intern. Ass'n of Fire Fighters Local 73 v. City of St. Louis, Mo., 96 F.3d 323 (1996) (captain and battalion chief); Firefighters' Inst. for Racial Equality v. City of St. Louis, Mo., 616 F.2d 350 (8th Cir. 1980), cert. denied, 452 U.S. 938 (1981) (captain) (discussing history of promotion test cases involving St. Louis Fire Department); Firefighters' Inst. for Racial Equality v. City of St. Louis, Mo., 588 F.2d 235 (8th Cir. 1978), cert. denied, 443 U.S. 904 (1979) (same); Firefighters' Inst. for Racial Equality v. City of St. Louis, Mo., 549 F.2d 506 (8th Cir. 1977), cert. denied, 434 U.S. 819 (1977) (same).

In the most recent "firefighters'" case to proceed to final judgment in this Court, the United States Court of Appeals for the Eighth Circuit affirmed United States District Judge Stephen N. Limbaugh's grant of summary judgment in favor of the City of St. Louis.  Firefighters' Inst. for Racial Equality, 220 F.3d at 901.  In that case, FIRE alleged that the 1997 promotion test for battalion chief in the St. Louis City Fire Department—which had been designed, administered, and scored by Barrett & Associates & Associates— was unlawful because it had a discriminatory impact on African-Americans.  Id. at 902.  That case, like this one, also included a claim for intentional discrimination against the City.  Id. at 905.  The United States Court of Appeals for the Eighth Circuit affirmed Judge Limbaugh's finding that FIRE "simply presented *no evidence of intentional discrimination*" and that the City had established that the exam "was related to safe

and efficient job performance and consistent with business necessity." Id. (emphasis added).

Since that lawsuit, the City conducted promotion tests for captain and battalion chief in 2000, 2002,[2] and 2004. Plaintiffs Leonard Davis and Dominguez Jones took the 2000 and 2004 captain promotion tests, but neither Davis nor Jones was placed on the promotion list for captain. Plaintiffs Addington Stewart and Michael Richardson took the 2000 and 2004 battalion chief tests, but neither Stewart nor Richardson was placed on the promotion list for battalion chief.

The 2000 promotion tests for captain and battalion chief were designed and administered by Barrett & Associates. Barrett & Associates also designed the 1997 promotion tests.

FIRE and St. Louis Fire Department Chief Sherman George informed the City that they objected to the use of Barrett & Associates to design and administer the 2000 tests. FIRE and Chief George's objections to Barrett & Associates were based on their belief that the 1997 tests discriminated against African-Americans. The complaints from the Fire Chief and the African-American firefighters were contrary to the finding by United States District Judge Limbaugh, who found "*no evidence of intentional discrimination* on the part of the City . . ." with regard to the 1997 tests. Firefighters' Inst. for Racial Equality v. City of St. Louis, Mo., 4:98CV789 SNL, Slip Op. at 9 (E.D. Mo. Sept. 2, 1999) (emphasis added). Judge Limbaugh's decision regarding the 1997 promotion tests was rendered *before* the City of St. Louis hired Barrett & Associates to implement the 2000 tests.

The 2004 promotion tests were designed and administered by a firm named SHL. Chief

---

[2]Local 73 and several Caucasian firefighters filed a lawsuit in this Court challenging the 2002 promotion tests before the tests were given by the City. In that case, I ruled against Local 73 and dismissed the Complaint because it was not ripe for adjudication. Barnes v. City of St. Louis, Mo., 4:02CV25, Slip Op. at 1 (E.D. Mo. Feb. 19, 2002). The City later abandoned the 2002 test results for reasons unrelated to the Complaint.

George also objected to the use of SHL to design and administer the 2004 tests.

The FIRE plaintiffs filed an EEOC Charge of Discrimination in 2000 alleging that the 2000 tests did not test the relevant skills and abilities of the examinees and that the tests had an adverse impact on African-Americans. The FIRE plaintiffs did not allege that the City intentionally discriminated against them in the EEOC charge. On August 22, 2003, the EEOC issued its finding that both the 2000 battalion chief and captain tests had an adverse impact on African-Americans, that the City failed to establish content validity for the 2000 captain test under the Uniform Guidelines for Employee Selection Procedures ("UGESP"), and that the 2000 battalion chief test "did not test the skills and abilities for that position and thus did not meet the [UGESP]." The EEOC attempted to conciliate the charge without success.

Plaintiffs filed an EEOC Charge of Discrimination on March 25, 2004, alleging that the 2004 tests "were discriminatory" to African-Americans because:

1)      A white female firefighter captain was given an extra hour to complete the written portion of the promotional exam;

2)      The grading system used by the testing firm (SHL) does not meet the EEOC guidelines regarding testing;

3)      The weights given to the parts of the examination do not reflect the jobs being tested for, as required by the guidelines;

4)      The service rating component of the qualifications for promotion is biased and prevents African Americans from getting a fair opportunity to be promoted;

5)      The grading system used by SHL does not meet the federal guidelines for testing. For example, with regard to the oral portions of the exams, the candidates performances were not taped, so that it will be impossible to verify, correlate or validate the scores of the individual raters – a violation of the EEOC guidelines;

6)        Several white firefighters who took the examinations dressed in dark suits to alert the assessors that they were union representatives;

7)        The use of this new promotional testing adversely impacts those African American firefighters who took the promotional exams in 2000 and were found to have been discriminated against in the 2000 testing process;

8)        The company hired to administer the 2004 promotional exams, SHL, is merely a reformulation of the firm Landy Jacobs, which previously engaged in exam impropriety in St. Louis.

In early July 2004, while the 2004 EEOC charge was pending, the City announced its intention to promote individuals from the 2004 promotion lists. In response, Plaintiffs filed this lawsuit on July 16, 2004.

## II.    STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential

elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly

supported motion for summary judgment, the nonmoving party has an affirmative burden to

designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355

F.3d 1112, 1113 (8th Cir. 2004). "To survive a motion for summary judgment, the nonmoving

party must substantiate  his [or her] allegations with sufficient probative evidence [that] would

permit a finding in [his or her] favor based on more than mere speculation, conjecture, or

fantasy." Putman v. Unity Health Sys., 348 F.3d 732, 733-734 (8th Cir. 2003) (internal quotation

omitted).

## III.    ANALYSIS

### A.    FIRE has Failed to Present Any Evidence of Intentional Discrimination

The City and Local 73 argue that the FIRE plaintiffs have failed to produce any evidence

that the City intentionally discriminated against African-American firefighters in the 2000 or 2004

testing processes. In response to the motion for summary judgment, the FIRE plaintiffs identified

specific points that they claim establish intentional discrimination.

I have reviewed each of the arguments advanced by the FIRE plaintiffs. The arguments

do not, individually or collectively, support a claim for intentional discrimination. I will address

each point that FIRE identifies in support of its claim of intentional discrimination below.

1.      *The Decision by the City of St. Louis to Hire Barrett
        & Associates to Develop and Administer the 2000
        Promotion Tests is not Evidence of Intentional
        Discrimination*

The FIRE plaintiffs allege that "[t]he City chose the testing firm, Barrett & Associates, with a proven history of discrimination against minority firefighters. A plethora of letters and documents FIRE forwarded to the City of St. Louis *before* the contract was awarded demonstrate this fact." FIRE's Memorandum in Opposition to the Joint Motion for Partial Summary Judgment on the Issue of Intentional Discrimination ("FIRE's Memo. in Opp."), p. 4 (emphasis in original).

Despite their bold assertion, the FIRE Plaintiffs do not support its position that Barrett & Associates has a "proven history of discrimination against minority firefighters" with any facts. The FIRE plaintiffs allege that the Fire Chief and individual African-American firefighters complained about Barrett & Associates. But complaints without any supporting documentation are not evidence of a "proven history of discrimination." The FIRE plaintiffs do not identify a single promotional exam designed by Barrett & Associates that has been adjudicated to be discriminatory.

To the contrary, the *only* evidence before me is that the tests designed and administered by Barrett & Associates in 1997 for the City were not discriminatory as evidenced by Judge Limbaugh's decision, which was affirmed by the United States Court of Appeals for the Eighth Circuit. Because the FIRE plaintiffs have failed to produce any evidence that Barrett & Associates has a history of discrimination, they cannot avoid summary judgment by relying on this unsupported assertion.

The FIRE plaintiffs have failed to establish evidence of intentional discrimination on this point.

2.  *The Barrett & Associates' Project Log Does Not Contain Evidence of Intentional Discrimination*

The FIRE plaintiffs allege that "Barrett & Associates kept a Project Log for the 2000 exams, in the ordinary course of business, and in that log is explicit proof of the City's knowledge of [Barrett & Associates'] history of providing racially indefensible tests, its knowledge of Chief George's strong opposition to the selection of [Barrett & Associates], and the City's inexplicable insistence that [Barrett & Associates] proceed anyway." Id. at 8. FIRE also claims that the project log is evidence that "[t]he City deliberately poisoned Barrett & Associates against the African-American candidates for promotion." FIRE's Response to the Defendant and Intervenors' Statement of Undisputed Material Facts and Plaintiffs Statement of Undisputed Facts ("FIRE's Statement of Facts"), p. 2.

FIRE has not pointed to any particular page or line in the project log that actually evidences intentional discrimination. A thorough review of the project log shows that it does not contain any evidence of intentional discrimination. Because FIRE has failed to present any evidence of intentional discrimination in the project log, the FIRE plaintiffs may not rely on this unsupported assertion to avoid summary judgment.

The FIRE plaintiffs have failed to establish evidence on intentional discrimination on this point.

3.      *The City's Decision to Hire Barrett & Associates*
        *without Competitive Bidding is Not Evidence of*
        *Intentional Discrimination*

The FIRE plaintiffs allege that "[t]he City hired Barrett & Associates without competitive

bidding for the contract." FIRE's Memo. in Opp. at 4.

The FIRE plaintiffs have failed to explain why the absence of competitive bidding is

evidence of intentional discrimination. Whether or not the City took bids from firms for the

development and administration of the 2000 promotion tests, without more, cannot support an

inference of intentional discrimination.

The FIRE plaintiffs have failed to establish evidence of intentional discrimination on this

point.

4.      *FIRE's Unsuccessful Legal Challenge to the 1997*
        *Tests is Not Evidence of Intentional Discrimination*

The FIRE plaintiffs contend that "[t]he 1997 test for battalion chief, which Barrett &

Associates administered in the City of [St.] Louis had been challenged in Court and was under

submission in the Eighth Circuit Court of Appeals, when the City hired Barrett & Associates in

2000, so the City knew exactly what type of firm it was getting when it hired Barrett &

Associates." Id.

FIRE's argument proves too much. Before the City hired Barrett & Associates to develop

the 2000 tests, Judge Limbaugh had determined that "there simply [was] *no evidence of*

*intentional discrimination* on the part of the City to support a claim of necessary to support a

claim of [intentional] discrimination . . ." with regard to the 1997 tests. This finding was affirmed

on appeal. FIRE's unsuccessful challenge to the Barrett & Associates designed 1997 test does

not and cannot be the evidentiary basis for a finding of intentional discrimination. That FIRE appealed this finding against it in 2000 does not prove that the City knew it should not hire Barrett & Associates. The *only* inference that can be drawn is that the City knew it was hiring a testing firm that was *not* discriminatory.

The FIRE plaintiffs have failed to establish evidence of intentional discrimination on this point.

5. *Fire Chief George's Objections to Barrett & Associates is not Evidence of Intentional Discrimination*

The FIRE plaintiffs allege that "The City of St. Louis hired Barrett & Associates to administer the promotional tests for captain and battalion chief over the objection of Fir [sic] Chief Sherman George. . . . The City proceeded to hire [Barrett & Associates] anyway, giving rise to the inference that the resulting adverse impact was intentional. Chief George reviewed ten submissions to the City of St. Louis in response to the RFP for the 2004 test and objected to 2 firms. The City hired one of the firms, SHL, the Fire Chief objected to." Id. at 5.

The St. Louis City Charter expressly grants to the Director of Personnel the power to "hold examinations, pass upon the qualifications of applicants, and establish eligible lists, as needed, and to certify names of eligibles to appointing authorities for filling vacancies in competitive positions." St. Louis City Charter, Art. XVIII, § 9(g) . The Director of Personnel's discretion in testing and passing upon the qualifications of the applicants is restricted by § 3 of the Charter: "For determining merit and fitness for appointment and promotion to competitive positions by means of competitive examinations held after due public notice. The tests of fitness in such examinations shall be practical in character and designed fairly to measure the relative

- 11 -

qualifications of candidates for positions of the several classes." St. Louis City Charter, Article XVIII, § 3(c); see also Mahon v. Scearce, 228 S.W.2d 384, 388-89 (Mo. Ct. App. 1950) (Director of Personnel's requirement that firefighter applicants have natural teeth violated Article XVIII, § 3(c) of the City Charter).

The St. Louis City Charter does not require the Director of Personnel to consult with the Fire Chief prior to establishing testing procedures for the promotion of firefighters. Nor does it grant to the Fire Chief the right to object to or reject the Director's decision of who to hire to develop and administer tests. As a result, the Director of Personnel was under no legal duty to respond to Chief George's objections to the decision to hire Barrett & Associates or SHL.

Additionally, the FIRE plaintiffs have failed to establish that Chief George's objections to the City hiring Barrett & Associates or SHL are relevant to their claim that the City intentionally discriminated against them. The FIRE plaintiffs have not alleged or established that Chief George had reviewed the tests at the time or that the Chief possessed any expertise in test design that would have enabled him to determine whether the tests designed by Barrett & Associates or SHL were "intentionally discriminatory."

Chief George's objection to the Director of Personnel's decision to hire Barrett & Associates and SHL is evidence that there was a perception among the African-American employees of the St. Louis Fire Department—from firefighters up to the Fire Chief—that the City of St. Louis harbors racial animosity towards African-Americans and intentionally prevents them from promoting within the Fire Department. While that perception is unfortunate, the FIRE plaintiffs' subjective beliefs are not competent evidence of intentional discrimination under Fed. R. Civ. P. 56 and cannot be used to withstand a motion for summary judgment.

The FIRE plaintiffs have failed to establish evidence of intentional discrimination on this point.

6.      *Comments by an Employee of Landy Jacobs are not Evidence of Intentional Discrimination*

The FIRE plaintiffs allege that Dr. Catherine Cline, "[a]n employee of Landy Jacobs, a previous incarnation of SHL, testified in deposition that she thought blacks were less qualified than whites." Id. The FIRE plaintiffs also allege that Dr. Cline "had previously expressed racial animus in her testimony that black firefighters 'were inferior to whites.'" Id.

FIRE has introduced two pages of 1994 deposition testimony from Dr. Cline. FIRE has completely failed, however, to establish the relevance of the deposition testimony. FIRE has not introduced any evidence that Landy Jacobs had a relationship with SHL. More importantly, FIRE has not alleged or established that Dr. Cline was involved with the development or administration of the 2000 or 2004 promotion tests. Because there is no evidence of Dr. Cline's involvement in the 2000 and 2004 promotion tests, her deposition testimony is not relevant to FIRE's claims of intentional discrimination.[3]

The FIRE plaintiffs have failed to establish evidence of intentional discrimination on this

---

[3]Additionally, FIRE's description of Dr. Cline's testimony is unsupported by the portions of the testimony it attached to its brief. In the two pages of deposition testimony supplied by FIRE, Dr. Cline did not testify that African-American firefighters are "less qualified" than or "inferior" to Caucasian firefighters. In her deposition testimony, Dr. Cline stated, "I don't think that anyone in the field or in the country or in society at large knows [why African-Americans and Caucasians score differently on tests]." Exhibit 8 to FIRE's Memo. in Opp. Her statement that no one knows why African-Americans and Caucasians score differently is directly contrary to FIRE's assertion that she testified that African-Americans score differently than Caucasians on tests because they are "less qualified" than or "inferior" to Caucasians. As a result, FIRE has failed to introduce admissible evidence that Dr. Cline, an alleged employee of "a previous incarnation of SHL," made racially discriminatory remarks about African-American firefighters in her 1994 deposition testimony.

point.

### 7. The Individual Plaintiffs' Deposition Testimony is not Evidence of Intentional Discrimination

The FIRE plaintiffs allege that the individual FIRE plaintiffs gave "clear and explicit deposition testimony regarding intentional discrimination in the 2000 and 2004 examinations." FIRE's Memo. in Opp. at 5. The Plaintiffs' deposition testimony, however, contains nothing more than conclusory allegations of intentional discrimination.

FIRE alleges that the following deposition testimony of Addington Stewart is evidence of intentional discrimination:

Q:   Paragraph three [of Count II of the Amended Complaint] alleges that there was willful and intentional discrimination. What do you understand that to mean?

A:   I think that the department of personnel and the city deliberately gave us this consultant who would discriminate against us who we had complained about and requested that they did not use based on past history.

Q:   And which consultant was that?

A:   Both [Dr. Barrett in connection with the 2000 test and Dr. Jacobs in connection with the 2004 test].

. . . .

Q:   Are you aware of any documents, specific documents, that in your opinion indicate intentional discrimination on the part of the city with respect to either test?

A:   I think the entire test.

Q:   The test itself?

A:   The test itself. The practice of what they did to administer this one and the last one. I do have knowledge that the chief didn't want

- 14 -

this firm out of nine firms.

FIRE's Memo. in Opp. at 6 (emphasis omitted).

Stewart's testimony that the City intentionally discriminated against African-American firefighters by hiring Drs. Barrett and Jacobs is not supported by any admissible evidence. Whether Stewart "thought" that the City intentionally discriminated against him, or that he "thought" the test itself was discriminatory is, again, a subjective belief that does not constitute admissible evidence. FIRE has failed to allege or establish that Stewart is qualified under Fed. R. Evid. 702 to give opinion testimony about the validity of promotional examinations. As a result, the portions of Stewart's deposition testimony cited by FIRE do not contain admissible evidence of intentional discrimination.

The other individual plaintiffs' deposition testimony relied upon by FIRE does not contain any admissible evidence of intentional discrimination either. The individual plaintiffs each testified that he "believed" the City intentionally discriminated against him. No plaintiff identified any specific document or event —other than the test itself—that was alleged evidence of intentional discrimination. As a result, the individual plaintiffs' deposition testimony does not contain any admissible evidence of intentional discrimination.

The FIRE plaintiffs have failed to establish evidence of intentional discrimination on this point.

        8.     *That the City Set the Cut-Off Scores for the 2000*
                 *Tests is not Evidence of Intentional Discrimination*

The FIRE plaintiffs allege that "[t]he City of St. Louis set the cut-off scores for the 2000 examination. This is in direct violation of the EEOC guidelines and one of the reasons the City

had to throw out the 1993 promotional examination." Id. at 11.

The City administered battalion chief promotion tests in 1993. After the results of the test were determined, the City was concerned about possible litigation because the tests had an adverse impact against African-American candidates. St. Louis Fire Fighters Ass'n Intern. Ass'n of Fire Fighters Local 73, 96 F.3d at 327. Because of the concern regarding possible litigation, the City decided to redistribute the weight of two portions of the test to eliminate the adverse impact on the African-American candidates. Id. After the tests were reweighted, Caucasian candidates tended to drop in ranking and African-Americans generally improved. Id. at 328. Local 73 and several Caucasian firefighters filed a lawsuit against the City, and United States District Judge George F. Gunn, Jr., entered a temporary restraining order and preliminary injunction against the City, barring it from making promotions based on the reweighted 1993 tests. Id. In response to the preliminary injunction, the City promised to abandon the 1993 test results and instigate new testing procedures. Id. The case was dismissed as moot as a result of the City's promise to abandon the tests. Id.

In this case, the FIRE plaintiffs have not alleged that the City impermissibly redistributed the weights of the various parts of the tests after the results were determined. Nor is there any evidence that such reweighting occurred here. As a result, to the extent that FIRE is attempting to claim that the City repeated any mistake it may have made regarding the 1993 tests, it has failed to introduce any evidence in support of that claim.

If, on the other hand, FIRE is trying to assert a claim that it is impermissible under EEOC guidelines for the City to distribute the weights given to the various parts of the test prior to administering tests, it has failed to identify which guidelines were allegedly violated.

The FIRE plaintiffs have failed to establish evidence of intentional discrimination on this point.

9.     *That a Caucasian Female Received a Disability Accommodation is not Evidence of Intentional Discrimination*

The FIRE plaintiffs allege that a Caucasian female captain received a disability accommodation for the 2004 battalion chief test. The FIRE plaintiffs allege that the captain's medical accommodation is evidence of intentional discrimination. FIRE's Memo. in Opp. at 12.

Four candidates for the 2004 promotion tests requested accommodations from the City pursuant to the Americans with Disabilities Act. The Department of Personnel sent letters to the four candidates requesting a statement regarding the type of accommodation needed and a letter from a medical professional verifying the nature of the candidate's disability and specifying the accommodation needed. Two candidates responded, and the Department of Personnel determined that one of those candidates was eligible to receive an accommodation under the Americans with Disabilities Act.

All four candidates who requested accommodations were Caucasian. No African-American candidates requested an accommodation. The candidate who received an accommodation was a Caucasian female captain. The accommodation she received was one additional hour and a separate room for the "In-Basket Examination."

The fact that one of four Caucasian candidates received an accommodation pursuant to the Americans with Disabilities Act is not evidence of intentional discrimination. Because none of the FIRE plaintiffs, or any other African-American candidate, requested and was denied an accommodation, the FIRE plaintiffs have not established that an adverse action was taken against

them with respect to disability accommodations.

FIRE has not offered any evidence that the City's proffered reasons for granting the accommodation are pretext.

The FIRE plaintiffs have failed to establish evidence of intentional discrimination on this point.

> 10.    *That Union Representatives Dressed in Dark Clothing to Indicate Union Status is not Evidence of Intentional Discrimination*

The FIRE plaintiffs allege that the fact that Caucasian union representatives dressed in dark clothing to indicate their union status is evidence of intentional discrimination.

The FIRE plaintiffs have not explained why indication of union status is evidence of intentional discrimination. They have not alleged that the City gave preferential treatment to the union representatives based on their position in the union. Whether or not union representatives indicated their status by wearing dark clothing does not support Plaintiffs' claims of intentional discrimination.

The FIRE plaintiffs have failed to establish evidence of intentional discrimination on this point.

**B.     Plaintiffs' 42 U.S.C. § 1981 Claim**

The City and Local 73 have filed a motion to dismiss FIRE's § 1981 claim because § 1981 does not provide for a cause of action against a local municipality. See Jett v. Dallas Indep. School District, 491 U.S. 701, 731 (1989). The City and Local 73 argue that a claim for employment discrimination against a local municipality must be brought under 42 U.S.C. § 1983. FIRE agrees that it can not maintain an action against a local municipality under § 1981, but FIRE

argues that under this Circuit's precedent I must construe the § 1981 claim as if it were brought under § 1983. See Lockridge v. Board of Trustees, Univ. Of Ark., 315 F.3d 1005, 1007 (8th Cir. 2003) (en banc) ("we liberally construe [a plaintiff's] complaint [against a local municipality] as including claims for violations of the equal protection clause and § 1981 [as if it were] brought under § 1983.").

In their latest filing, The City and Local 73 state that they do not object to allowing FIRE to "amend [its] Complaint to convert [its] § 1981 claim into a § 1983 claim . . ."  Accordingly, I will construe FIRE's § 1981 claim as if it were brought under § 1983.  The parties have not briefed the issue of whether The City and Local 73 are entitled to summary judgment on Plaintiffs' § 1983 claim.  As a result, I will not decide that issue today.

## IV.    CONCLUSION

The FIRE plaintiffs have presented no evidence to support their allegations that the City intentionally discriminated against them in the 2000 and the 2004 testing processes.  The only "evidence" offered by the FIRE plaintiffs to support their claims is a litany of vague, conclusory, and incoherent allegations, but allegations are not evidence.  As a result, the City and Local 73's joint motion for summary judgment on the issue of intentional discrimination shall be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant and Intervenor's Joint Motion for Partial Summary Judgment on the Issue of Intentional Discrimination [#180] is **GRANTED** in part.

**IT IS FURTHER ORDERED** that summary judgment shall be entered for Defendant

City of St. Louis and against Plaintiffs on the issue of intentional discrimination.


Dated this  9th  day of June, 2006.


_____

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE