UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ADDINGTON STEWART, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:04CV00885 RWS |
| | ) |
| CITY OF ST. LOUIS, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| PAUL E. DAVIS, et al., | ) |
| | ) |
| Intervenors. | ) |

**MEMORANDUM AND ORDER**

This matter is before me for rulings on the parties' motions relating to trial.

Plaintiffs Firefighters' Institute for Racial Equality and four individual African-American firefighters (collectively "FIRE" or the "FIRE plaintiffs") have filed this action against the City of St. Louis (the "City") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. §§ 1981 & 1981a. The FIRE plaintiffs claim that the promotion tests for the City of St. Louis Fire Department in 2000 and 2004 for Fire Captain and Battalion Chief had an adverse impact on African-Americans, and seek injunctive relief and damages.

The St. Louis Fire Fighters' Association International Association of Fire Fighters Local 73 and several Caucasian firefighters (collectively "Local 73") are intervenors in this case. The intervening Caucasian firefighters took the 2000 and 2004 promotion tests and are on the promotion lists challenged in this case.

Prior to trial I granted summary judgment in favor of the City and Local 73 on the issue of whether the City *intentionally* discriminated against Plaintiffs in the testing process.

**I. Motions *in Limine***

***A. Intervenors' Motion in Limine to Exclude the Testimony of Dr. Gary Renz on the Subject of Validation of Employee Selection Procedures [#226]***

During trial, Intervenors renewed their Daubert objection regarding Dr. Renz's testimony about his alternative methods to calculate adverse impact for the 2000 exams. The rejection of expert testimony is the exception rather than the rule. Fed. R. Evid. 702 Advisory Committee Notes. In this case, the parties have engaged in vigorous cross-examination of Dr. Renz and have presented competing expert testimony over the course of numerous trial days.

However, Federal Rule of Evidence 702 states that testimony from a qualified expert on an issue on which expert testimony will assist the trier of fact is admissible "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Dr. Renz's first alternative was to hypothesize what would have happened had there been more than two promotions from the 2000 Battalion Chief exam. This scenario is an impossibility, because the 2000 list is "dead" and has been replaced. There are fundamental and obvious errors in Dr. Renz's analysis. First, the issue is whether there was an actual adverse impact; pretending about what could have happened is irrelevant to this issue of what actually happened. Second, the Uniform Guidelines allow giving consideration to the use of the same test "elsewhere," a situation not applicable to Dr. Renz's speculation, under which there is no "elsewhere." Third, it is impossible to speculate about how many candidates could have been

promoted, or their identity. In this regard, Fire Chief Sherman George testified that he is not required to make promotions based on strict ranking. At the time of the 2000 exam, Chief George would receive three names for each vacancy to be filled, out of which he would choose the one person to be promoted. Fourth, even if more promotions had been made, in all likelihood the four-fifths (4/5) rule of thumb could not be utilized due to small numbers, as discussed below. Fifth, there is no way of determining whether further promotions would have resulted in any statistically significant racial disparity. For example, Dr. Renz admitted that if three promotions were made, there would *not* be a statistically significant difference under either the Difference of Proportions Test or the Fischer Exact Test. If four or five promotions had been made, there would be no disparity under the Fischer Exact Test. Likewise, if six or seven promotions had been made, there would be no statistically significant difference under either the Difference of Proportions Test or the Fischer Exact Test.

Dr. Renz's second alternative involved combining the results of the 2000 Battalion Chief's exam and the 2000 Fire Captain's exam. This second alternative is lacking in the "elsewhere" requirement of the Guidelines because both exams involve the same location, the St. Louis Fire Department. Additionally, the Guidelines address the use of "the selection procedure" in multiple locations. The 2000 Battalion Chief's exam and the 2000 Fire Captain's exam do not meet this requirement because they are not the same test. The position of Battalion Chief and Fire Captain have different duties, responsibilities and pay. Indeed, Battalion Chiefs supervise Fire Captains. Further, the tests were clearly different. For example, the Battalion Chief's exam had an in-basket component, which the 2000 Fire Captain's exam did not. Further, Dr. Renz noted in his report that: "The test questions in the job knowledge tests differed significantly in the Fire

Captain and Battalion Chief tests." Moreover, Dr. Renz admitted that his idea of combining the results of the two tests was "novel," and that he had never seen it done before.

Dr. Renz's third alternative was to combine the results of the 1997 and 2000 Battalion Chief exams. Once again, there are logical flaws in this proposition. First, the tests clearly were not the same. The evidence was clear that, for security reasons, the City never gives the same test twice. Further, two tests in the same geographical location do not satisfy the "elsewhere" requirement of the Guidelines for combining tests. Finally, and most significantly, the validity of the 1997 Battalion Chief exam was upheld by the Eighth Circuit. Firefighters Institute for Racial Equality v. City of St. Louis, 220 F.3d 898, 905 (8th Cir. 2000).

Because Dr. Renz's alternatives were not "the product of reliable principles and methods" and did not apply "the principles and methods reliably to the facts of the case," I will exclude his testimony as to his alternative methods to calculate adverse impact for the 2000 exams.

***B. Intervenors' Motion in Limine to Preclude Testimony Regarding Allegations of Intentional Discrimination, and Limiting Testimony to the Two Remaining Issues, to Wit, (1) Whether the Tests Adversely Impacted African-American Candidates, and (2) Whether the Tests Were Related to Safe and Efficient Job Performance and Consistent with Business Necessity [#228]***

In my June 9, 2006 Order granting the Motion for Partial Summary Judgment on the Issue of Intentional Discrimination, I held that:

> The FIRE plaintiffs have presented no evidence to support their allegations that the City intentionally discriminated against them in the 2000 and the 2004 testing processes. The only "evidence" offered by the FIRE plaintiffs to support their claims is a litany of vague, conclusory, and incoherent allegations, but allegations are not evidence. As a result, the City and Local 73's joint motion for summary judgment on the issue of intentional discrimination shall be granted.

I will therefore grant Intervenors' Motion in Limine to Preclude Testimony Regarding Allegations of Intentional Discrimination [#228].

***C. Defendant's Motion in Limine to Preclude Testimony Concerning Claims for Damages to F.I.R.E. or "Similarly Situated African American Firefighter" [#233]***

The FIRE plaintiffs raised this motion in their post-trial brief. However, I granted this motion *in liminae* in the final pretrial conference in this case on February 8, 2007. Therefore, this issue is moot.

## II. Motions During Trial

***A. Motion to Exclude Exhibit 34 - EEOC Determination Regarding 2000 Examinations***

The FIRE plaintiffs argue that the City's expert report references the EEOC Determination with respect to the 2000 examinations and that therefore, there are no valid grounds for the City to object to admission of the EEOC Determination. The City responds that these references are not to the EEOC Determination itself, but rather to the allegations made about the Determination in the FIRE plaintiffs' Complaint. By its very terms, the EEOC Determination is not a "finding" that the City actually discriminated; it is a finding of probable cause to believe that the City discriminated against African-Americans in its testing practices. As a result, I find that the EEOC Determination is of little value to the trier of fact in light of the great amount of documentary and testimonial evidence that has been produced since the EEOC Determination was issued. I will therefore receive Exhibit 34 for what it is: An EEOC Determination of probable cause to believe that the City discriminated against African-Americans in its testing practices.

### B. Motion to Exclude Exhibit 180 - the "Blockett Report"

The FIRE plaintiffs sought to have the Blockett Report admitted to the record for its substance. The Blockett Report was written by Charles Blockett in response to a request by former Personnel Director William C. Duffe. The Blockett Report contained Charles Blockett's conclusions regarding his evaluation of the 2000 Fire Captains' and Battalion Chiefs' tests. Mr. Blockett did not testify at trial.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The Blockett Report is hearsay because it is a statement made by Charles Blockett outside of trial, which the FIRE plaintiffs "offered in evidence to prove the truth of the matter asserted." Id.

The FIRE plaintiffs argue that the Blockett Report is a "business record" under the Federal Rules of Evidence and, therefore, is admissible as a hearsay exception, without foundation. This argument misconstrues a major requirement for qualifying a document as a business record: It must have been ". . . kept in the course of a regularly conducted business activity" and "was the regular practice of that business activity to make the memorandum, record, report or data compilation as shown by the testimony of the custodian . . . ." Fed. R. Evid. 803(6). The Blockett Report was not made or created by the City of St. Louis in regular conduct of its business. Rather, it was put together by Charles Blockett in response to a specific one-time request by former Personnel Director William C. Duffe. Therefore, the Blockett Report does not qualify as a "business record" with Fed. Rule. Evid. 803(6), and it does not qualify for a hearsay exception. Accordingly, I will exclude the Blockett Report from the record in this case because it is hearsay.

### C. Motion to Exclude Exhibit N - Dr. Barrett's Expert Report

The FIRE plaintiffs argue that sections 16 and 20 of Exhibit N have no relevance to the two issues in this case - adverse impact and validity. However, these sections form part of Dr. Barrett's expert report, and I, as the trier of fact in this case, have the authority to assess the credibility of Dr. Barrett in regard to these sections. I will allow this evidence into the record and give these sections whatever weight I believe appropriate.

### III. Intervenors' Post-Trial Motion to Re-Open the Record [#256]

Intervenors moved this Court to re-open the record to permit the introduction of, and the submission of testimony in regard to two documents: (1) a letter dated February 14, 2000, from Gary Gebhart to Chief Sherman George, in which Mr. Gebhart encloses the draft job description prepared by Dr. Winfred Arthur on behalf of Barrett & Associates, requesting that it be distributed to various named firefighters, including plaintiff Addington Stewart, and requests that those firefighters direct any comments to Mr. Gebhart; and (2) a letter dated February 23, 2000 to Mr. Gebhart, signed by plaintiff Stewart, in which it is stated: "The Black Firefighters of the St. Louis Fire Department have agreed as a group that to respond to the Job Description analysis form, for the position of Fire Captain and Battalion Chief would not serve the best interest of the minorities involved in the testing procedure." The Intervenors maintain that these two documents, and testimony about them, directly refute Stewart's rebuttal testimony that he did not receive the draft job description prepared by Barrett & Associates.

Re-opening the record is within the sound discretion of the trial court. *See, e.g.*, U.S. v. Dico, Inc., 266 F.3d 864, 873 (8th Cir. 2001) (citing Arthur Murray, Inc. v. Oliver, 364 F.2d 28, 34 (8th Cir. 1966). On direct examination in his rebuttal testimony, Stewart stated that, "Once we had those initial meetings where we filled out the forms for the job analysis, we did nothing else with the job analysis." On cross-examination by Intervenors' counsel, Stewart stated that he did

not receive any communication or any correspondence from anyone in the City regarding the meeting that he had with Dr. Arthur. Intervenors argue that "Stewart would not have sent a letter to Mr. Gebhart in which he expressly declined to provide feedback on a document if he had not received the document and been told that feedback to Mr. Gebhart was requested."

However, the record is not clear on this matter. Intervenors' argument assumes that because Mr. Gebhardt mailed the 2000 Fire Captain job analysis to Fire Chief George and asked him to forward it to various job incumbents, one of whom was Stewart, then Stewart must have received the document. However, Mr. Gebhart testified that he had no knowledge as to whether Stewart received the document. Intervenors also assume that because Stewart signed a letter stating that black St. Louis firefighters as a group refused to respond to the document, and refused to participate in a process that would discriminate against them, then he individually must have received the document. This is a jump in logic with no factual basis. Captain Stewart testified that he did not receive the document. The letter states only that, "The Black Firefighters of the St. Louis Fire Department have agreed as a group that to respond to the Job Description analysis form, for the position of Fire Captain and Battalion Chief would not serve the best interest of the minorities involved in the testing procedure." That the group decided not to respond does not prove that Stewart received the document and it certainly does not prove that he testified falsely.

I will therefore deny Intervenors' Motion to Re-Open the Record [#256].

Accordingly,

**IT IS HEREBY ORDERED** that Intervenors' Motion in Limine to Exclude the Testimony of Dr. Gary Renz on the Subject of Validation of Employee Selection Procedures [#226] is **GRANTED.**

**IT IS FURTHER ORDERED** that Intervenors' Motion in Limine to Preclude Testimony Regarding Allegations of Intentional Discrimination, and Limiting Testimony to the Two Remaining Issues, to Wit, (1) Whether the Tests Adversely Impacted African-American Candidates, and (2) Whether the Tests Were Related to Safe and Efficient Job Performance and Consistent with Business Necessity [#228] is **MOOT.**

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine to Preclude Testimony Concerning Claims for Damages to F.I.R.E. or "Similarly Situated African American Firefighter" [#233] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Exhibit 34, the EEOC Determination Regarding 2000 Examinations, is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Exhibit 180, the "Blockett Report," is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Exclude Exhibit N, Dr. Barrett's Expert Report, is **DENIED.**

**IT IS FURTHER ORDERED** that Intervenors' Motion to Re-Open the Record [#256] is **DENIED.**

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 25th day of May, 2007.